AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

DISTRICT OF __Massachusetts__

UNITED STATES OF AMERICA

v.

EDGAR RAMOS
JOHN MEHIA

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: MJ04 - M-239 JLA

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __May 28th, 2004__ in __Suffolk__ county, in the District of __Massachusetts__ defendant(s) did, (Track Statutory Language of Offense) knowing and in reckless disregard of the fact that an alien has come to, entered, or remained in the United States in violation of law, transported, moved or attempted to transport and move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law

in violation of Title __8__ United States Code, Section(s) __1324(a)(1)(A)(ii)__

I further state that I am a(n) __Special Agent__ and that this complaint is based on the following
Official Title

facts:

See attached affidavit

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

05-30-2004                        at            Boston, MA
Date                                              City and State

U.S. Magistrate Judge
Joyce London Alexander                    _____
Name & Title of Judicial Officer              Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## AFFIDAVIT OF SPECIAL AGENT MICHAEL PERRELLA

I, Michael Perrella, having been duly sworn, do hereby depose and state as follows:

1. I am a Special Agent with Immigration and Customs Enforcement ("ICE"), formerly the United States Immigration and Naturalization Service ("INS"), and have been so employed since May of 1996. Among other duties, I am assigned to investigate alien smuggling organizations and practices.

2. I am aware that bringing in, harboring, and transporting an alien who is present in the United States in violation of law, is a violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).[1]

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and agents of this agency. This affidavit is not intended to set forth all of the information that I and other law enforcement personnel have learned during this investigation but is submitted in support of an application for a criminal complaint against **EDGAR JAVIER RAMOS**, d.o.b. 5/17/72, and **JOHN F. MEHIA**, d.o.b. 9/11/70, charging both with a violation of 8 U.S.C.

---

[1] 8 U.S.C. §1325(a)(1)(A)(ii) reads as follows: Any person who knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law [shall be guilty of a crime.]

§1324(a)(1)(A)(ii).

**OVERVIEW OF ALIEN SMUGGLING**

4. From my training, I know that, while no cases are alike, there are usually several different individuals and means of transportation that an alien will encounter throughout the smuggling route to reach the final destination within the United States from their home country.

5. For example, once a smuggled alien reaches the United States, the alien will usually be taken to a "safe house" or "drop house." Here, the group of aliens will wait until they can be moved either to their final destination or another "safe house." When the group is ready to be moved, they may be taken to a staging location at which point, they will meet one or more guides, also known as "coyotes", who will transport them either to another or the final location.

6. Aliens also pay, in some form or fashion, in order to be smuggled. The manner and means of payment also vary. For example, an alien may pay a sum up front while still in their home country, and pay the balance upon reaching their final destination.

**THE INSTANT OFFENSE/ENCOUNTER WITHIN THE UNITED STATES**

7. On Friday May 28th, 2004, Massachusetts Bay Transportation Authority ("MBTA") officers responded to a call for

a suspicious vehicle at the Sullivan Square Orange Line "T" stop parking lot located in Boston, MA. A "T" inspector had noticed that the van containing a large number of individuals had been in the parking lot for several hours. The van had a temporary license plate from Texas.

8. When officers approached the vehicle, they observed a number of people sleeping in the back of the van. The vehicle had a temporary vehicle registration and officers requested further information about the vehicle from the driver who was later identified as **EDGAR JAVIER RAMOS**, d.o.b. 5/17/72. RAMOS gave the officer an envelope with vehicle information which indicated that the vehicle was recently purchased. In the same envelope, there was a list containing, among other things, names; the notation "pagado" which means "paid" in Spanish; and a destination. A copy of the list is attached as Exhibit A. While **RAMOS** indicated that he was working for a tour company and was transporting the "passengers" from Texas to Massachusetts and other locations along the Eastern seaboard, the MBTA officer noted that none of the "passengers", five males, had any luggage. In order to determine the identity of the all of the individuals within the van, the officers transported the "passengers" to the MBTA office at Roxbury. The officers requested that **RAMOS** and the second driver, later identified as **JOHN F. MEHIA**, d.o.b. 9/11/70, accompany them to the MBTA office. Both **RAMOS** and **MEHIA** agreed.

**THE PASSENGERS/ALIENS**

9. During the course of the investigation, ICE agents determined that the five "passengers" were all Brazilian nationals who recently left Brazil, traveled to Mexico, and were now present illegally in the United States. Each of the five aliens had a Brazilian passport which indicated that each recently traveled from Brazil into Mexico. Each passport had an admission stamp which indicated their entry into Mexico. None of the five aliens had a required United States visa or other form of immigration document which indicated a legal entry into the United States.

10. During the course of the investigation, the five aliens were identified as (1) Ivair Gomes DeAndrade; (2) Flavio Fernando Luis; (3) Roberto Rodriques Campos; (4) Areides Vieira Nunes and (5) Arquivaldo Gomes de Oliveria.

11. Based upon information obtained from various interviews and from documents, it was determined that each of the aliens paid or agreed to pay a sum of money in order to be smuggled into the United States. The amount of the payment ranged between $9,000 and $10,000 in United States funds. Each alien left Brazil approximately two weeks ago and ultimately arrived in Mexico City between May 14th and May 16th, 2004.

12. Each of the aliens then were smuggled across the United States/Mexico border by a person within the smuggling organization and brought to Laredo, Texas. From Laredo, Texas, they were transported to Dallas, Texas by several different members of the smuggling organization. Some of the aliens were hidden in the trunks of vehicles. In Dallas, Texas, the aliens were met by **RAMOS** and **MEHIA** who were driving the van which was ultimately encountered in the Boston, MA area. Originally, there were thirteen "passengers" in the van. Eight of the passengers were dropped off at various locations, including New Jersey, and other stops within Massachusetts, during the two day trip from Dallas to the Boston area.

**INTERVIEW WITH RAMOS**

13. After being advised of his rights in his native language, and after agreeing to waive those rights, RAMOS spoke with investigators. A summary of the information provided by RAMOS is as follows: He admitted that he and MEHIA were paid to drive the vehicle in question and its passengers from Dallas, Texas to New Jersey, Massachusetts, and North Carolina. He identified his bosses as "Alfonso" LNU and "Carlos" LNU. RAMOS indicated that he has made at least six other trips of the same type, transporting approximately the same number of persons each time. He admitted that the "passengers" do not have tickets, do

not have luggage, and are not permitted to leave until they pay. If a passenger did not provide the money at the point of the final destination, RAMOS stated that he would call "Carlos" and await permission from "Carlos" to release the alien. RAMOS indicated that he would be paid upon his return to Texas and would receive $525.00 upon his return. (None of the "passengers" ever returned with him back to the Texas area.) RAMOS was responsible for collection of the remaining balances from the aliens if they had not already paid in full. Normally, he would collect $500 per alien and provide this money to his bosses. During these prior trips, he had information from the persons that he was transporting that they entered the United States illegally. He was transporting them to the interior of the United States to their final destination. The information he previously obtained during these trips including specific details regarding how the aliens were smuggled into the United States and how much they were paying to be smuggled into the United States.

14. With respect to this most recent trip, RAMOS claimed that he did not know that the aliens were illegally present in the United States when he first encountered them in Dallas. However, during the trip, he spoke with several of the aliens that he was transporting. During these conversations, RAMOS determined that the aliens were from Brazil. The aliens told

him, among other things, the amount of money they were paying to be smuggled into the United States; that they had only been in the United States a short time after being smuggled in from Mexico; their means of travel; and how they remained undetected by various immigration authorities while they were being smuggled into the United States.

**INTERVIEW WITH MEHIA**

15. After being advised of his rights in his native language, MEHIA agreed to waive those rights and speak with ICE investigators. A summary of the information provided by MEHIA is as follows: He was a driver with RAMOS and that he would be paid $500 upon his return to Dallas by Alfonso. (None of the passengers were returning to the Dallas, Texas area). This was the fourth trip he made; in each of the prior trips, he transported approximately twelve persons per trip. During all of the prior trips, almost all of the passengers that he transported were from Brazil, and the trip always included Massachusetts as the final destination.

16. MEHIA claimed that he was unsure if the passengers were illegally present, although he thought it was odd that none of the passengers had any luggage or other change of clothes. He said he never asked "Alfonso" the status of the passengers because he thought they were, in fact, illegal, and did not want

to lose his job if he asked about their status. In this particular case, prior to making the trip, he stated that he was told his passengers were at a "house."

**CONCLUSION**

Based on the foregoing information, I believe probable cause exists to conclude that **EDGAR JAVIER RAMOS**, d.o.b. 5/17/72, and **JOHN F. MEHIA**, d.o.b. 9/11/70, did, knowing or in reckless disregard of the fact that an alien has come to, entered, and remains in the Untied States in violation of law, transported or moved or attempted to transport or move such alien or aliens within the Untied States by means of transportation or otherwise, in furtherance of such violation of law, in violation of 8 U.S.C. §1324(a)(1)(A)(ii).

Michael Perrella
Special Agent
United States Immigration
and Customs Enforcement

Subscribed and sworn to before me this 30th day of May, 2004

JOYCE LONDON ALEXANDER
UNITED STATES MAGISTRATE JUDGE

(203) 796 5467. 500
Ext 5



Date : May 26 / 2004



# OXFORD TOURS

## TRANSFERS SERVICE

500
ANTONIO
20394
DENVUR.

Adalto

| | SALIDA DE DALLAS / TEXAS | | | |
|---|---|---|---|---|
| | PASAJERO | PRECIO | TEL./CONTACTO | DESTINO |
| 01 | Arquivaldo Gomez/Milton | 50 | 781-913.9511 Renato | Somerville/MA |
| 02 | Valdeci Silva/Milton | | 781-913.9511 Renato | Somerville/MA |
| 03 | Joao Paiva/Milton | Pagado | 781-913.9511 Renato | Somerville/MA |
| 04 | Flavio Silveira/Milton | Pagado | 973-466.1173 Wallace | Newark/NJ |
| 05 | Wanderson Goncalves/Regis | 200,00 | 617-678.1148 Adalto | Somerville/MA |
| 06 | Jose Pereira/Regis | Pagado | 617-678.1148 Adalto | Somerville/MA |
| 07 | Renato Santos/Regis | Pagado | 617-678.1148 Adalto | Somerville/MA |
| 08 | Marcos Lopes/Regis | Pagado | 617-678.1148 Adalto | Somerville/MA |
| 09 | Ivair Andrade/Wanderson | Pagado | 704-566.8177 Geraldo | Charlotte/N.Carolina |
| 10 | Roberto Campos/Hermes | P | 508-395.0359 Daniel | Framingham/MA |
| 11 | Areides Nunes/Hermes | 70,00 | 508-879.1810 Luzinete | Framingham/MA |
| 12 | Flavio Luis/Hermes | P. | 978-740.4669 Ediel 978-977.2732 | Peabody/MA |
| 13 | Thiago Costa/LuisEdivalso | 70,00 | 973-589.4732 Daniel 973-477.7659 Daniel | Newark/NJ |

Valor Cobrado :
Chofer        : Edgar   Telf. : 214-642.0729
Chofer        : John Mehia
Camioneta  : Chevrolet  Placa :
Salida Millas :
Llegada Millas :
Adelanto    : $ 300,00

2 - 3 - 4

Adalto = 1000

2 = 301 946 0018 · WDC.

5678} Renato. 2000

"Exhibit A"

≈JS 45 (5/97) - (Revised USAO MA 1/15/04)

# Criminal Case Cover Sheet — U.S. District Court - District of Massachusetts

Place of Offense: _____  Category No. __II__  Investigating Agency __ICE__

City __Boston__    Related Case Information:

County __Suffolk__    Superseding Ind./Inf. _____  Case No. _____
Same Defendant _____  New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

## Defendant Information:

Defendant Name __Edgar Ramos__    Juvenile ☐ Yes  ☒ No

Alias Name _____

Address _____

Birth date (Year only): __1972__  SSN (last 4 #): __7847__  Sex __M__  Race: __H__  Nationality: __Mexican__

Defense Counsel if known: _____    Address: _____

Bar Number: _____

## U.S. Attorney Information:

AUSA __Nadine Pellegrini__    Bar Number if applicable _____

Interpreter:  ☒ Yes  ☐ No    List language and/or dialect: __Spanish__

Matter to be SEALED:  ☐ Yes  ☒ No

☒ Warrant Requested    ☐ Regular Process    ☐ In Custody

## Location Status:

Arrest Date: __5/28/04__

☒ Already in Federal Custody as _____ in _____
☐ Already in State Custody _____  ☐ Serving Sentence  ☐ Awaiting Trial
☐ On Pretrial Release: Ordered by _____ on _____

Charging Document:  ☐ Complaint  ☐ Information  ☐ Indictment

Total # of Counts:  ☐ Petty ____  ☐ Misdemeanor ____  ☒ Felony __x__

Continue on Page 2 for Entry of U.S.C. Citations

☒  I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: 5/30/04    Signature of AUSA: *[signature: Nadine Pellegrini]*

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant** _____

### U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 8 USC 1324(a)(1)(A)(ii) | Smuggling of Aliens | |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

RAMOS JS-45.wpd - 1/15/04 (USAO-MA)

**Criminal Case Cover Sheet**  **U.S. District Court - District of Massachusetts**

Place of Offense: _____    Category No. __II__    Investigating Agency __ICE__

City __Boston__    Related Case Information:

County __Suffolk__    Superseding Ind./ Inf. _____    Case No. _____
Same Defendant _____    New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name __John Mehia__    Juvenile  ☐ Yes  ☒ No

Alias Name _____

Address _____

Birth date (Year only): __1970__   SSN (last 4 #): __9544__   Sex __M__   Race: __H__   Nationality: __USA__

Defense Counsel if known: _____    Address: _____

Bar Number: _____

**U.S. Attorney Information:**

AUSA __Nadine Pellegrini__    Bar Number if applicable _____

Interpreter:  ☒ Yes  ☐ No    List language and/or dialect: __Spanish__

Matter to be SEALED:  ☐ Yes  ☒ No

☒ Warrant Requested    ☐ Regular Process    ☐ In Custody

**Location Status:**

Arrest Date: __5/28/04__

☒ Already in Federal Custody as _____ in _____
☐ Already in State Custody _____    ☐ Serving Sentence    ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by _____ on _____

Charging Document:  ☐ Complaint   ☐ Information   ☐ Indictment

Total # of Counts:  ☐ Petty ___   ☐ Misdemeanor ___   ☒ Felony __1__

Continue on Page 2 for Entry of U.S.C. Citations

☒  I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: 5/30/04    Signature of AUSA: *Nadine Pellegrini*

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant** _____

## U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 8 USC 1324(a)(1)(A)(ii) | Smuggling of Aliens | |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____