UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10198-MLW |
| | ) | |
| EDGAR RAMOS | ) | |
| JOHN MEHIA | | |

DEFENDANTS' MOTION TO SUPPRESS PHYSICAL EVIDENCE AND
DEFENDANT EDGAR RAMOS'S MOTION TO SUPPRESS STATEMENTS

  Defendants, Edgar Ramos and John Mehia, move that this Court suppress all evidence derived from the stop and detention of their persons and the search of their persons and the van defendant Ramos was driving on May 28, 2004. This was a warrantless stop and search and no valid exception to the warrant requirement applies. Therefore, this search and seizure violated the Fourth Amendment of the United States Constitution and all evidence flowing from the illegal stop, including the statements, must be suppressed.

  Defendant Edgar Ramos, further, moves this Court to suppress statements allegedly made by him to federal agents from Immigration Customs Enforcement Agency (ICE) following his arrest. As grounds for suppression of his statements, defendant Ramos states:

  1. Defendant's statements were made in response to custodial interrogation.

  2. Defendant did not knowingly, intelligently and voluntarily waive his constitutional rights under Miranda v.

<u>Arizona</u>, 384 U.S. 436 (1966).  <u>Dickerson v. United States</u>, 530 U.S. 428 (2000).

    3.  The statements are a product of the initial illegal search and seizure of his person and the van he was driving.

    Defendant Ramos's affidavit in support of this motion is attached as Exhibit A.

FACTS

    On the morning of May 28, 2004, defendant Edgar Ramos drove a van into the MBTA public parking lot located at Sullivan Square bus station in Boston, Massachusetts.  He parked the van in a legal parking spot and remained seated in the driver's seat.  There were several other Latino men seated in the van, one of whom was defendant John Mehia.  Shortly after defendant Ramos parked the van a uniformed officer rapped on the front passenger window.  After the window was opened, the officer began asking Ramos questions including a request to see his license.  Within seconds of that request, the officer suddenly opened the two doors to the back of the van and continued asking questions which included a request to see the identification papers of everyone in the van.  After the doors were opened defendant Ramos turned over a passenger list and the passengers in the van turned over their passports.

The government has contended that the passenger list is one factor which led the police to suspect that passengers in the van were being illegally imported and which gave them legal authority to conduct further investigation. This further investigation resulted in the arrest of defendants and all of the passengers. The government has also asserted that the passenger list is incriminating because defendant Ramos had it in his possession.

Sometime after documents were seized, all of the occupants of the van, including defendants, were transported by law enforcement officers to MBTA Headquarters on South Hampton Street in Boston. The van was left behind in the parking lot. Hours later defendants were again moved by officers to the JFK Federal building where they were held prior to being interrogated.

A female officer spoke to defendant Ramos and questioned him about the case prior to advising him of his Miranda rights. Although Ramos was told something about his rights when he was asked to make a "sworn statement," he did not understand all of them. He was asked to sign a document, which he did. Attached as Exhibit B. Defendant Ramos did not knowingly and voluntarily waive his Miranda rights. In response to interrogation, Ramos made incriminating statements.

ARGUMENT

A.  DEFENDANTS RAMOS AND MEHIA WERE SEIZED IN VIOLATION OF THE FOURTH AMENDMENT WHEN THE DOORS OF THE VAN IN WHICH THEY WERE SEATED WERE OPENED BY LAW ENFORCEMENT OFFICER WITHOUT PERMISSION.

The Fourth Amendment protects all persons against unreasonable searches and seizures.  United States Constitution Amendment IV.  "No right is held more sacred, or is more carefully guarded, by common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others unless by clear and unquestionable authority of law."  Terry v. Ohio, 392 U.S. 1, 9, 88 S.Ct. 1868, (1968) (quoting Union Pac. R. Co. v. Botsford, 141 U.S. 250, 251, 11 S.Ct. 1000 (1891)).  Searches and seizures absent a warrant are permitted only under narrowly proscribed rules.  Accordingly, the Fourth Amendment mandates that police conduct is limited even where officers' actions do not amount to a "technical arrest" or a full blown search.  Terry at 20-21 (1968).

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and limited purpose, constitutes a 'seizure' of 'persons' within the meaning of" the Fourth Amendment.  Whren v. United States, 517 U.S. 806, 809-810, 116 S.Ct. 1769 (1996), citing Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391 (1979).  "Once the police halt a vehicle on the highway, both the driver and the

passengers are in a practical sense subject to the officers' authority." United States v. Sowers, 136 F.3d 24, 27 (1ST Cir. 1998); Whren v. United States, 517 U.S. 806 (1996). Although the police did not actually stop the motor vehicle in the present case because it was already parked, once they opened the two side doors to the van and demanded to see all passengers' identifications, they had seized the defendant for purposes of the Fourth Amendment.

Car stops are investigative detentions which are to be analyzed under the principles of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968). An automobile stop is thus subject to the constitutional imperative that it not be unreasonable under the circumstances. Whren at 810. A passenger in a vehicle has standing to challenge an investigatory stop under the Fourth Amendment because the passenger's own interests are affected when the vehicle in which he is riding is stopped. United States v. Kimball, 25 F. 3d 1 (1st Cir. 1994).

In determining whether a seizure is "unreasonable," courts look to the two-prong test announced in Terry v. Ohio, 392 U.S. 1, 19-20, 88 S.Ct. 1868 (1968). The dual inquiry is, "whether the officers' actions were justified at their inception," and "whether their actions were reasonably related in scope to the circumstances which justified the officers' initial interference." United States v. Nee, 261 F.3d 79, 83 (1st Cir.

2001) (quoting <u>Terry v. Ohio</u>, 392 U.S. 1, 19-20, 88 S.Ct. 1868 (1968)).

The Fourth Amendment permits officers to detain an individual briefly on reasonable suspicion of criminal activity and to frisk him for weapons whenever there is an objectively reasonable belief that the subject is armed and dangerous. <u>Whren v. Brown</u>, 517 U.S. 806, 819 (1996); <u>Michigan v. Long</u>, 463 U.S. 1032, 1049 (1983). However, reasonable suspicion requires more than a mere hunch that a person might be engaged in some illicit activity. <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989). To evaluate the legality of a traffic stop, the court must ask whether the officer's actions were justified at their inception, and if so, whether the officer's subsequent actions were fairly responsive to the emerging circumstances originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed. <u>United States v. Sowers</u>, 136 F.3d 24, 27 (1st Cir. 1998). In the present case, the police lacked sufficient reasonable suspicion of criminal activity at the inception for even a brief detention. Here, where the police opened the two van doors and demanded to see everyone's identification, the official action clearly exceeded lawful authority.

B.   DEFENDANT EDGAR RAMOS DID NOT MAKE A KNOWING, INTELLIGENT AND VOLUNTARY WAIVER OF HIS MIRANDA RIGHTS PRIOR TO BEING INTERROGATED BY ICE AGENTS AT THE JFK BUILDING.

The government may not use statements obtained through custodial interrogation of a defendant unless it demonstrates by a preponderance of the evidence that the defendant knowingly, intelligently, and voluntarily waived his right to remain silent and his right to have a lawyer present during questioning. Colorado v. Connelly, 479 U.S. 157, 168 (1986); Miranda v. Arizona, 384 U.S. 436, 444 (1966).

It is beyond dispute that defendant Ramos was in custody on May 28, 2004, when he was questioned by federal ICE agents at the JFK building in Boston.  He had been transported by law enforcement officers from the MBTA parking lot to two different law enforcement agencies.  The van he had been driving was left behind.  He had been held for several hours.  The agents had taken possession of his identification documents including his resident alien card.

It is also beyond dispute that defendant Ramos was interrogated.  According to the federal agents' documentation he was questioned for approximately two hours.  The only issue is whether any waiver of Ramos's rights to remain silent and to have a lawyer present was knowing, intelligent, and voluntary:

> The inquiry has two distinct dimensions. . . . First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation,

-7-

>    coercion, or deception. Second, the waiver must have
>    been made with a full awareness of both the nature of
>    the right being abandoned and the consequences of the
>    decision to abandon it. Only if the 'totality of the
>    circumstances surrounding the interrogation' reveal
>    both an uncoerced choice and the requisite level of
>    comprehension may a court properly conclude that the
>    Miranda rights have been waived.

Moran v. Burbine, 475 U.S. 412, 421 (1986) (citations omitted), quoted in Colorado v. Spring, 479 U.S. 564, 573 (1987).

Here, because the defendant Ramos did not fully comprehend his rights, in particular his right to have an attorney present during questioning, he was unable to form a knowing, intelligent, and voluntary waiver of his Miranda rights.

## REQUEST FOR EVIDENTIARY HEARING

Defendants request an evidentiary hearing on this motion. Defendants reserve their right to supplement or amend this motion in response to the government's reply or based on facts that develop at the evidentiary hearing.

| JOHN MEHIA | EDGAR RAMOS |
| --- | --- |
| By his attorney, | By his attorney, |
| /s/ Melvin Norris | /s/ Catherine K. Byrne |
| Melvin Norris | Catherine K. Byrne |
|   B.B.O. #373900 |   B.B.O. #543838 |
| 260 Boston Post Road, Suite 9 | Federal Defender Office |
| Wayland, MA 01778 | 408 Atlantic Avenue, 3rd Floor |
| Tel: 508-358-3305 | Boston, MA  02110 |
|  | Tel: 617-223-8061 |

Date: August 2, 2005