UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | CRIMINAL NO. 04-10198-MLW |
| ) | |
| EDGAR RAMOS ) | |
| JOHN MEHIA | |

**DEFENDANT RAMOS' SECOND POST-HEARING MEMORANDUM IN SUPPORT OF
<u>MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS</u>**

<u>**INTRODUCTION**</u>

Defendant Ramos moved to suppress physical evidence and statements and a hearing was held on January 11 and 12, 2007. Further hearing was held on September 18, 2007. Defendant files this second post-hearing memorandum in further support of his motion to address issues that arose during the September 18th hearing.

<u>**ISSUE**</u>

**Whether a lesser degree of reasonable suspicion is warranted where the suspected crime is terrorism?**

In the present case, MBTA Officer O'Hara testified that based upon his observations, he suspected "possible terrorist activity." At the hearing on September 18th, the court raised the question of whether the nature of the suspected offense should factor into the calculus when ascertaining whether there is reasonable suspicion that a crime was being committed. Specifically, does the fact that the police were investigating what they hypothesized might be terrorist activities make a

difference. The court referred to two cases cited in a law review article that might possibly support that proposition.

The first case, <u>Florida v. J.L.</u>, 529 U.S. 266, 120 S.Ct. 1375 (2000) is a case in which the court held that an anonymous tip lacked sufficient indicia of reliability to establish reasonable suspicion for a Terry investigatory stop and stated that there is no "firearm exception" to the Terry analysis. 272-274. In dicta the court added:

> The facts of this case do not require us to speculate about the circumstances under which the danger might be so great as to justify a search even without a showing of reliability. We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk. 273-274.

Dicta have no precedential value. <u>Beneficial National Bank v. Anderson</u>, 539 U.S. 1, 17 (2003). Moreover, the Court's comment was limited to a very specific content. The comment pertained to an anonymous tip. The Court did not suggest that it would go beyond the circumstances of a report of a direct observation of danger. A direct observation of danger — seeing a person carrying a bomb – is different from an inferential chain of circumstances on the basis of which a witness hypothesizes danger. In the present case there is neither an anonymous tip nor an observation of an ongoing crime putting lives in danger. Rather, there is only speculation of terrorism based upon a

series of inferences, predominantly the fact that the men appeared to be Middle Eastern.

The dissent in <u>Brinegar v. United States</u>, 338 U.S. 160, 69 S.Ct. 1302 (1949)(dissent) conceives of a scenario where a child has been recently kidnaped as a circumstance in which the standards required for a <u>Terry</u> stop might be lowered.  As in <u>Florida v. J.L.</u>, the Court hypothesizes an emergency situation in which police are investigating a crime that is ongoing, where human life is in jeopardy, and in which there is direct, rather than inferential evidence of the criminal act.

The Eleventh Circuit similarly cited the circumstances of an emergency situation for which there was direct evidence saying that when an emergency is reported by an anonymous caller the need for immediate action may outweigh the need to verify the reliability of the caller.  In <u>United States v. Holloway</u>, 290 F.3rd 1331, 1339 (11th Cir. 2002) the police made a warrantless entry into a home where moments earlier a 911 caller had described gunshots and arguing.  Because the police were responding to an emergency situation in which they reasonably believed a person to be in danger there was no Fourth Amendment violation.

Suggestions that the level of reasonable suspicion can be lower are, thus, limited to situations in which there is direct

evidence or an emergency where a crime has actually been committed, unlike the present case.

Some cases that refer to the dicta in Florida v. J.L. concern the degree of intrusion permissible once reasonable suspicion has already been established, stating that the more intrusive a stop, the more reasonable suspicion might be required. To be sure, the amount of *permissible intrusion* is a function of the gravity of the crime being investigated. For example, the Seventh Circuit referring to Florida v. J.L. discussed the degree of intrusion permissible once reasonable suspicion had already been established in finding that reasonable suspicion existed to remove luggage from a train which caused a lengthy detention of a passenger. United States v. Goodwin, 449 F.3rd 766, 770 (7th Cir. 2006). In the present case, however, the issue is whether or not reasonable suspicion existed at the outset, not the degree of intrusiveness.

We have found no cases that utilize the dicta in Florida v. J.L. to arrive at the conclusion that the more dangerous the crime being investigated, the less reasonable suspicion is required for a stop. The suggestion then appears only in dicta, a dissent and a law review article, and is limited to contexts in which there is direct evidence or knowledge of an emergency situation.

Justice Jackson wrote that the Fourth Amendment right of people to be secure against unreasonable searches and seizures "are not merely second-class rights but belong in the catalogue of indispensable freedoms." Brinegar v. United States, 338 U.S. 160, 180, 69 S.Ct. 1302, 1313 (1949)(dissent). "Among the deprivation of rights, none is so effective in cowing a population, crushing the spirit of the individual and putting terror in every heart.  Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government." Id.

## CONCLUSION

For the foregoing reasons and reasons stated in previous filings, defendant's motion should be allowed.

>                             EDGAR RAMOS
>                             By his attorney,
>
>                             /s/ Catherine K. Byrne
>                             Catherine K. Byrne
>                                B.B.O. #543838
>                             Federal Defender Office
>                             408 Atlantic Avenue, 3rd Floor
>                             Boston, MA 02110
>                             Tel: 617-223-8061

### CERTIFICATE OF SERVICE

I, Catherine K, Byrne, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 25 , 2007.

>                             /s/ Catherine K. Byrne
>                             Catherine K. Byrne